# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **UNITED STATES OF AMERICA,** Plaintiff, v. **HUMBERTO CONCEPCIÓN ANDRADES** Defendant. | **CRIM.** **16-526 (FAB)** **17-240 (FAB)** |

## MITIGATION SUBMISSION

**TO THE HONORABLE FRANCISCO A. BESOSA**
**UNITED STATES DISTRICT JUDGE**
**DISTRICT OF PUERTO RICO:**

Mr. Humberto Concepción, through the undersigned Counsel, respectfully submits this sentencing memorandum to request that the Court dictates a sentence as recommended in the plea agreement and within the GSR established in plea agreement signed by all parties under Rule 11(c)(1)(B). The Defense submits that the recommended sentence is a sentence that is reasonable and sufficient, but not greater than necessary, to comply with the purposes of sentencing in 18 U.S.C.A § 3553(a), et seq.

## I. INTRODUCTION

The Defense submits that the agreed sentence, and not higher, is warranted pursuant to § 3553(a), et seq., on the basis that Mr. Concepción is a first offender with a history of legitimate employment and a strong family support network that will allow

for a smooth reintegration to society. Furthermore, since he has been incarcerated he has been constantly employed as an orderly, and has no institutional complaints or sanctions within the Bureau of Prisons. His performance at MDC as an employee has been described as outstanding in every aspect. All these factors put together should assuage the court's concerns regarding the length of time to impose since the joint recommendation is a lengthy and severe sentence that will provide the necessary rehabilitation and dissuasion from future criminal conduct.

## II. BACKGROUND

**A**. **The Application of § 3553(a)**.

The overarching principle of §3553(a) is to impose a sentence sufficient, but not greater than necessary. <u>Kimbrough v. United States</u>, 128 S. CT at 570. In reaching a decision on what constitutes an appropriate sentence, the district court should consider all the relevant factors and construct a sentence that is minimally sufficient to achieve the broad goals of sentencing.

Mr. Concepción submits that the plea-agreed sentence, will be sufficient, but not greater than necessary, to comply with the purposes of sentencing, 18 U.S.C. § 3553(a). The Court is required to compute the Guideline Sentencing Range as a starting point and as an initial benchmark. <u>Gall v. United States</u>, 128 S.Ct. 586, 596 (2007). Here, there is dispute that the GSR is 138-210 months (level 35 CHC I).

However, the Guidelines are not the sole, nor even the first among the factors that Congress has commanded the courts to apply in section 3553(a). The Court may not presume that the Guidelines range is reasonable and must make an individualized assessment based on the facts presented. Id. at 596-7. Indeed, the Guidelines are only one of the factors to consider, and §3553(a) directs the judge to consider sentences other than imprisonment. Id. at 602 (emphasis added). The Supreme Court later emphasized again that the *Guidelines are not only not mandatory on sentencing courts; they are also not to be presumed reasonable.* Nelson v. United States, 129 S.Ct. 890, 892 (2009) (emphasis in original).

Thus, district courts are now permitted and indeed directed to consider whether the Sentencing Commission's underlying policies, and/or their application to the facts of a particular case, result in a sentence that is unreasonably high. See United States v. Kimbrough, 552 U.S. 85, 128 S.Ct. 558, 575 (2007); United States v. Boardman, 528 F.3d 86 (1st Cir. 2008); United States v. Martin, 520 F.3d 87, 93-94 (1st Cir. 1998). The First Circuit elaborated on the meaning and breadth of the so-called parsimony principle in United States v. Yonathan Rodriguez, 527 F.3d 221 (1st Cir. 2008). In Rodriguez, the First Circuit stressed that the Supreme Court ruling in Kimbrough requires a more holistic inquiry and that §3553(a) is more than a laundry list of discrete sentencing factors; it is, rather, a tapestry of factors, through which runs the thread of an overarching principle. Id. at 228.

IV. Mitigating Circumstances

It is of utmost importance that the court see beyond the numerical representations that characterize every federal defendant. Mr. Concepción is more than a number, thus far this court knows that he is defendant number 1 in criminal case 17-240, defendant number 6 in criminal case 16-526. He is inmate number 50180-069, and his USSG base offense level is 35 according to the US Probation or 33 according to the recommendations of the government and defense. Mr. Concepción is much more than a number. He is a son, a brother, a father and a husband.

He has been married to Ms. Aimee Monegro since 1998. They procreated two children, Shaimely and Ian. Ms. Monegro served 24 months for her participation in the money laundering charged in the indictment. She is currently on supervised release and has just been offered a position in Quality Control in Amgen Pharmaceuticals `in Juncos, Puerto Rico.

This court should recognize that aside from the substantial sentence it will impose if the plea agreement is accepted, Mr. Concepción has suffered great hardship. During Hurricane Maria he spent weeks without knowing the fate of his family. He had to sit in anguish and view all the footage of the ravaged island, wondering if his family is ok, if anyone he knew had perished. Furthermore, Ms. Monegro was not afforded bail at any time during the indictment, so his two children had to live with Mr. Concepción's older

brother. Ian, who was thirteen at the time when both parents were incarcerated initially, has struggled deeply with this situation. He withdrew into himself and despite having had a therapist helping him throughout, the trauma of seeing both his parent taken away will mark the rest of his life. The ordeal of everyone at school knowing his family's legal predicament turned a once extroverted child into a quiet and sullen teen.

Shaimely, the eldest also struggled at first, but she had less peer pressure since she had already graduated from high school and has managed to start her college education at Sacred Heart University in Santurce. She is also doing an internship at the Press Department of the Puerto Rico State Department. She has assumed a co-parenting role alongside her mother, since she recognizes her brother was much more affected emotionally by their parents legal problems than she was.

One of the concerns discussed with the Probation Officer was how these two youngsters who had it all, would transition into a life where not everything is handed to them. We discussed this with Shaimely, (20 years old) how she would now part with the notion that any material possession she desired was given to her by her parents, expensive shoes, handbags, clothing, extravagant parties at hotels, etc. After a long pause she exhaled profoundly and stated, "It is true that my parents gave me everything, and I was able to have stuff most people never have because they can't afford it. The thing is, that is not who our parents raised us to be. Material things never defined us. Our family life defined us, seeing my parents come from humble beginnings and work on a daily basis. I know my mother was studying while she was pregnant with me. They were both

very young when they married. They could have done things the easy way, terminate the pregnancy and start ahead alike anybody else.  Instead they had me and things were three times harder.  I Believe that what defined us as a family is that we overcome adversity together.  The four of us are one.  The worst punishment for all of us is the knowledge that my father will not be present in my brother's high school graduation or my college graduation.  But this court should know that we will be by our father throughout this whole ordeal. My mother, my brother and me will be at the airport the day he arrives, and I hope by then I will have a job and I will treat him to his first lunch or dinner in the free community."

During his Pre-Sentence Interview it was evident that the most painful prospect for Mr. Concepción of the upcoming sentencing process is the prolonged separation from his family.  He states that he fell in love with Aimee at a very young age, and they have literally grown up together since their teenage pregnancy at 17 years of age.

Mr. Concepción held legal employment for most of his younger years.  He states he loved sales, and he sold perfumes, clothing, watches, anything that would earn him a buck.  Once Aimee became pregnant with Shaimely, it was increasingly difficult to keep up his studies and hers, since they could not make ends meet with part time jobs.  So Humberto quit school ( he was starting mechanical engineering) and went to work full time in order to pay the medical bills related to the pregnancy and  support Aimee's university studies in Engineering.

It is precisely this desire to provide for his family that led him astray from the path he began early in life as a hard working man. In one of our mitigation meetings we asked Mr. Concepción to search within him to the first moment when he decided that getting involved in illegal transactions was an option. He got a far a way look in his face momentarily and stated, "I recall the exact moment. Aimee was quite a ways into her college education, she was studying for some exams and Shaimely was around two years old at the time. My salary was not covering all expenses and Aimee had stopped working in order to concentrate on her studies. That night our refrigerator was empty, the cold was so condensed it seemed like smoke was coming out of it. We had onions and soda crackers. That night our dinner was sautéed onions over soda crackers. I felt ashamed for not being able to provide better for my growing family, I was so young and ignorant….". "We started receiving food stamps and that felt even worse. I recall how my mother fought to get us out of Los Lirios housing project, having no financial help from our father and making ends meet as best she could she moved us to a house in Caparra Terrace. The truth is that because I was in sales and worked a lot in the street I met people that would talk about deals that were easy and generated a lot more income than what I was doing up till then. I can categorically tell you that the first illegal things I did was out of need due to the financial hardship we were having on account of our teenage pregnancy and lack of good job opportunities. However I cannot lie and once you get in it, the money and the adrenaline fuels you into ignoring all the basic values and mores my mother taught us. I am the only one who confronted legal problems. I felt

deeply ashamed when I had to face my mother for the first time after my arrest, because I knew she did not raise her children to do illegal things."

During his Pre-sentence interview Mr. Concepción had an epiphany of sorts. The Probation Officer rebutted his idea that he had been such a great father. Since despite having been present during all the important events and having provided every single material want for his two children, he did so leading a double life. Mr. Concepción came to the realization that he did lead a double life, and that he put his beloved family at risk by getting involved in illegal drug trafficking activities. Moreover, Mr. Concepción admitted that during the time span before his arrest he had become increasingly anxious and started abusing drugs and alcohol in order to escape from his reality that an arrest was imminent and the time to pay his debt with society was growing nearer each day. He also admitted that his children started noticing changes in his behavior and realizing their father was becoming an alcoholic, arriving drunk at nights and starting to drink with a shot of alcohol in his morning coffee.

Mr. Concepcion has a solid family foundation. Despite having an absent father in terms of financial support, his mother Eladia made up for that absence. She worked her whole life to provide for her sons and make up for the father's absentee role. Eladia has been a constant support for her son, whom she calls Alex for his second name Alejandro. She states she has written her son almost every day, and she strives to stay healthy, since she knows Alex is worried that something may happen to her during his incarceration. Mr. Concepcion provided a sample of her letters and through them you see a tight knit

relationship. Ms. Andrades states when she lost her mother, the only person who offered solace was Alex with a poignant letter he wrote to her, that according to Eladia rescued her from the depths of depression from the loss of her mother. Mr. Concepcion provided a letter she wrote to him he wanted to preserve because as he states it was serendipitous and led him to make the difficult decision to plead guilty. In part it states:

*" Sometime we ask God that he change our current situation, without knowing that He put us there to create change in us. Surrender to Him your path, trust in Him, and He will act. My darling don't stop your prayers on account of this storm. It is the storm that will stop on account of your prayers. My darling nothing lasts forever, not joy, not pain. All in life is about going forward and having faith".[1]*

**V. The proposed sentence will provide just punishment because it satisfies the Statutory Sentencing Factors and provides for the Defendant's rehabilitation.**

The recommended sentence represents a substantial penalty that adequately reflects the seriousness of the offense of conviction, will promote respect for the law, and provide just punishment as required by section 3553(a)(2)(A). While it is easy to become inured to enormous sentences in the federal system, a federal felony conviction resulting in the recommended sentence is a lengthy period of time and is substantial. The proposed sentence will be more than sufficient to deter Mr. Concepción Andrade from similar

---
[1] Letter dated January 17, 2019 at 6:19pm

crimes in the future, as required by sections 3553(a)(2)(B) and (C). The interest in general deterrence will be served by the proposed sentence.

There is no data to suggest that a longer sentence would have any marginally greater deterrent effect. Indeed, research consistently has shown that increases in the severity of punishments do not yield significant (if any) marginal deterrent effects. <u>Michael Tonry, Purposes and Functions of Sentencing</u>, 34 CRIME & JUST. 1, 28 (2006). Three different panels of the National Academy of Science have reached that conclusion, as has every major survey of the evidence. Id. Turning to section 3553(a)(2)(D), Mr. Concepción is not in need of correctional treatment of the sort that a prison or jail facility is uniquely equipped to provide.

Mr. Concepcion requests the court recommend a designation in Bennettsville, South Carolina, Pensacola or Miami, Florida, in order of preference. He also requests to receive all drug and alcohol treatment while at BOP, and educational and vocational programs available, and any and all benefits under the First Step Act.

### IV. CONCLUSION

We humbly implore this court based on all the aforementioned reasons, to impose the recommended sentence.

**RESPECTFULLY SUBMITTED**, in San Juan, P.R., on June 11, 2019.

**I HEREBY CERTIFY** that a true and exact copy of the foregoing document was on this same date filed through the Court's ECF/ECM system which will automatically serve copy of this document to all interested parties in this case.

/s/ Jennie Espada
**JENNIE ESPADA-OCASIO, ESQUIRE**
225003
ESPADA, MIÑANA, PEDROSA &
QUETGLAS, PSC
122 CALLE MANUEL DOMENECH (ALTOS)
SAN JUAN, PR 00928-3503
TEL. 787-758-1999/633-7199
FACSIMILE 787-773-0500
email: espada.esquire@gmail.com