IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>Plaintiff,<br><br>v.<br><br>**HUMBERTO CONCEPCIÓN ANDRADES**<br><br>Defendant. | **CRIM. 17-240 (FAB)** |

**EMERGENCY MOTION TO REDUCE SENTENCE**

**AND/OR TO RELEASE DEFENDANT ON FURLOUGH**

TO THE HONORABLE FRANCISCO A. BESOSA

UNITED STATES DISTRICT JUDGE

DISTRICT OF PUERTO RICO:

**COMES NOW** Mr. Humberto Concepción Andrades, through counsel, moves for an order reducing his sentence pursuant to 18 U.S.C. §§ 3582(c)(2) and (c)(1)(A)(i) in light of the COVID-19 pandemic.  On Mrch 13, 2019, Mr. Concepción entered a plea of guilty to violating 18 U.S.C. § 846: conspiracy to possess with intent to distribute controlled substances.

Prisoners with pre-existing medical conditions, like defendant, who has sinusitis and severe congestion on account of it, render them more vulnerable to be more severely impacted by infection of the coronavirus then those in excellent health.   https://www.cdc.gov/coronavirus/2019-ncov/need-extra-

precautions/people-at-higher-risk.html

<u>In light of the COVID-19 emergency, this Court should grant Defendant's motion for a reduced sentence pursuant to 18 U.S.C. § 3582(c) or alternatively allow him on furlough til the threat subsides</u>

Defendant is incarcerated at Bennettsville Correctional Facility run by the BOP.  There have already been three positive cases but no deaths.

"COVID-19 is a serious disease" that makes certain persons severely ill and can lead to death. Declaration of Chris Beyrer, MD, MPH, Professor of Epidemiology, Johns Hopkins Bloomberg School of Public Health, ¶ 5 (Mar. 16, 2020), annexed as **Exhibit C**. The current best estimate is that the fatality rate among all demographics "is 5-35 times the fatality associated with influenza infection." Id., Beyrer Dec. ¶ 5.  Crowding, inadequate ventilation, and security issues all contribute to the spread of infectious disease in jails and prisons. Martin Kaste, Prisons and Jails Worry About Becoming Coronavirus 'Incubators', NPR (Mar. 13, 2020), https://www.npr.org/2020/03/13/815002735/prisons-and-jails-worry-about-becoming-coronavirus-incubators.  Hand sanitizer, an effective disinfectant recommended by the CDC to reduce transmission rates, is contraband in jails and prisons because of its alcohol content. Keri Blakinger & Beth Schwarzapfel, How Can Prisons Contain Coronavirus When Purell is a Contraband?, ABA Journal (Mar. 13, 2020).  Medical care of prisoners is limited at the best of times. https://oig.justice.gov/reports/2016/e1602.pdf (finding that the BOP experienced chronic medical staff shortages and failed to take adequate measures to address them, leading to problems meeting the medical needs of prisoners, requiring the use of outside hospitals, and endangering the safety and security of institutions); https://federaldefendersny.org/about-

us/news/statement-from-federal-defendersof-new-york.html (same).

In these circumstances, a reduced sentence is consistent with all of the § 3553(a) factors, including the COVID-19 pandemic, and is sufficient, but not greater than necessary, to satisfy all the goals of sentencing.  Defendant has already served a significant period of incarceration for his conviction.  Further, the United States Attorney General has recently directed the Bureau of Prisons "to prioritize the use of home confinement as a tool for combatting the dangers that COVID-19 poses to our vulnerable inmates." https://www.justice.gov/file/1262731/download.  If resentenced to a lower sentence, Defendant would remain on supervision for his 60-month term of supervised release.  Stringent conditions could be imposed if necessary, such as home detention, thereby minimizing any risk of danger to the public.

The Covid-19 emergency also provides "extraordinary and compelling reasons" to reduce Defendant's sentence under 18 U.S.C. § 3582(c)(1)(A)(i)

For similar reasons, the Court should grant release under the "compassionate release" statute, 18 U.S.C. § 3582(c)(1)(A)(i).  The statute grants sentencing courts authority to reduce an otherwise final term of imprisonment for "extraordinary and compelling reasons." 18 U.S.C. § 3582(c)(1)(A)(i).  The statute provides:

(1) in any case—

(A) *the court*, upon motion of the Director of the Bureau of Prisons, or *upon motion of the defendant* after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the

defendant's facility, whichever is earlier, *may reduce the term of imprisonment* (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), *after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—*

> *(i)    extraordinary and compelling reasons warrant such a reduction; . . .*
> *****
> *and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]*

18 U.S.C. § 3582(c)(1)(A) (emphasis added).   Thus, the statutory requirements for sentence reduction are that the court (1) find extraordinary and compelling reasons for the reduction, (2) consider the relevant sentencing factors under 18 U.S.C. § 3553(a), and (3) ensure any reduction is consistent with applicable policy statements.

Initially, the compassionate release statute previously permitted sentence reductions only upon motion of the Director of the Bureau of Prisons.  But Congress expanded the statute in the First Step Act of 2018. Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5239 (Dec. 21, 2018).  As amended, § 3582(c)(1)(A)(i), now permits courts to consider motions filed by the defendant so long as "the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf," or after "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]"  Accordingly, "while the First Step Act did preserve the BOP's role relative to a sentence reduction in certain limited respects, it eliminated the BOP Director's role as the exclusive channel through which a sentence reduction could be considered by courts." *United States*

*v. Redd*, No. 1:97- CR-00006-AJT, 2020 WL 1248493, at *7 (E.D. Va. Mar. 16, 2020).

Attached to this motion as Exhibit I, is a letter where it shows Mr. Concepción has taken the administrative steps to obtain the requested relief and it was denied.

This Court should likewise excuse further exhaustion, because any delay in consideration of this motion would put Defendant's life in danger and risk irreparable harm. *See*, *Matter of Extradition of Toledo Manrique*, No. 19-MJ-71055, 2020 WL 1307109, at *1 (N.D. Cal. Mar. 19, 2020) (refusing to delay consideration of release to await evidence of an outbreak in the jail because that "may be too late").

The compassionate release statute does not expressly define or limit what constitutes an "extraordinary and compelling" reason for a sentence reduction. *Black's Law Dictionary*, however, defines "extraordinary" as "[b]eyond what is usual, customary, regular, or common," BLACK'S LAW DICTIONARY (11th ed. 2019). Its definition of "compelling need," is one "so great that irreparable harm or injustice would result if [the relief] is not [granted]." Id. The present global pandemic is a quintessential extraordinary circumstance beyond what most Americans have experienced in their lifetimes.  Thus, the combination of circumstances provides a compelling reason for Defendant's immediate release to a term of supervised release.

<u>The Court has authority to find extraordinary and compelling reasons other than those expressly identified in commentary to U.S.S.G. § 1B1.13</u>

In 28 U.S.C. § 994(t), Congress delegated to the Sentencing Commission authority to "describe what should be considered extraordinary and compelling

reasons for sentence reduction, including the criteria to be applied and a list of specific examples." The policy statement issued in exercise of that authority, U.S.S.G. § 1B1.13, provides examples of "extraordinary and compelling reasons" in the application notes. The examples generally fall into four categories based on a defendant's (1) terminal illness, (2) debilitating physical or mental health condition, (3) advanced age and deteriorating health in combination with the amount of time served, or (4) compelling family circumstances. U.S.S.G. § 1B1.13 comment. n.1(A)-(C). The commentary also includes a fifth catch-all provision for "extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)" as determined by the Director of the Bureau of Prisons. U.S.S.G. § 1B1.13, comment. n.1(D).

However, the policy statement was last amended in November 2018, before the First Step Act was passed, and it still requires a motion filed by the BOP. For that reason, "a growing number of district courts have concluded the Commission lacks" a policy statement applicable to the post-First Step Act statute. *United States v. Mondaca*, No. 89-CR-0655 DMS, 2020 WL 1029024 (S.D. Cal. Mar. 3, 2020) (internal quotation marks omitted); *see*, *also*, *United States v. Brown*, 411 F. Supp. 3d 446, 449-50 (S.D. Iowa 2019) (citing cases). In *United States v. Cantu*, the Court explained:

> Given the changes to the statute, the policy-statement provision that was previously applicable to 18 U.S.C. § 3582(c)(1)(A) no longer fits with the statute and thus does not comply with the congressional mandate that the policy statement must provide guidance on the appropriate use of sentence-modification provisions under § 3582.

No. 1:05-CR-458-1, 2019 WL 2498923, at *4 (S.D. Tex. June 17, 2019) (emphasis in original). Similarly, in *Redd*, the court noted that § 1B1.13 "by its

terms applies only to motions for compassionate release filed by the BOP Director, not motions filed by defendants." 2020 WL 1248493, at *6.  Therefore, the court concluded, "there does not currently exist, for the purposes of satisfying the First Step Act's 'consistency' requirement, an 'applicable policy statement.'" *Id.*

Even where courts have not deemed § 1B1.13 entirely inapplicable due to the lack of amendment, they have held that judges have authority based on the catch-all provision in Application Note 1(D) to find extraordinary and compelling reasons other than those listed. *See*, *e.g.*, *United States v. Fox*, No. 2:14-cr-03-DBH, 2019 WL 3046086, *3 (D. Me. July 11, 2019) (stating that the existing policy statement provides "helpful guidance," but "is not ultimately conclusive given the statutory change").  In *Redd*, the court explained that "Application Note 1(D)'s prefatory language, which requires a determination by the BOP Director, is, in substance, part and parcel of the eliminated requirement that relief must be sought by the BOP Director in the first instance." 2020 WL 1248493, at *7 (citing cases); *see also*, *United States v. Perez*, No. 88-10094-1-JTM, 2020 WL 1180719, at *2 (D. Kan. Mar. 11, 2020) ("[A] majority of federal district courts have found that the most natural reading of the amended § 3582(c) and § 994(t) is that the district court assumes the same discretion as the BOP director when it considers a compassionate release motion properly before it." (internal quotation marks omitted)).

The government conceded this point in *United States v. Young*, agreeing that "the dependence on the BOP to determine the existence of an extraordinary and compelling reason, like the requirement for a motion by the BOP Director,

is a relic of the prior procedure that is inconsistent with the amendments implemented by the First Step Act." No. 2:00-CR-00002-1, 2020 WL 1047815, at *6 (M.D. Tenn. Mar. 4, 2020).  The court in *Young* followed the majority of district courts in recognizing that § 1B1.13's defined categories are not exclusive: "In short, federal judges are no longer constrained by the BOP Director's determination of what constitutes extraordinary and compelling reasons for a sentence reduction." *Id. See also, United States v. O'Bryan*, No. 96-10076-03-JTM, 2020 WL 869475, at *2 (D. Kan. Feb. 21, 2020); *United States v. Maumau*, No. 2:08-cr-00758-TC-11, 2020 WL 806121, at *2-3 (D. Utah Feb. 18, 2020) ("[A] majority of district courts to consider the question have embraced Mr. Maumau's position" that limiting the catch-all provision to circumstances identified by the BOP is inconsistent with the law) (citing ten other cases); *Brown*, 411 F. Supp. 3d at 451 ("[I]f the [First Step Act] is to increase the use of compassionate release, the most natural reading of the amended § 3582(c) and § 994(t) is that the district court assumes the same discretion as the BOP Director when it considers a compassionate release motion properly before it. . . . Thus, the Director's prior interpretation of 'extraordinary and compelling' reasons is informative, but not dispositive." (internal quotation marks and citations omitted)); United States v. Beck, No. 1:13- CR-186-6, 2019 WL 2716505, at *6 (M.D.N.C. June 28, 2019) ("While the old policy statement provides helpful guidance, it does not constrain the Court's independent assessment of whether 'extraordinary and compelling reasons' warrant a sentence reduction under § 3582(c)(1)(A)(i).").

Accordingly, this Court has authority to consider whether the worsening global pandemic, combined with the other relevant circumstances in this case,

present an extraordinary and compelling basis for a sentence reduction, regardless of whether it falls within one of the existing categories in § 1B1.13 commentary. B. COVID-19 is an unprecedented and health emergency that presents a serious risk to vulnerable prisoners.  On March 11, 2020, the World Health Organization officially classified the new strain of coronavirus which causes COVID-19 as a pandemic. WHO Director General's Opening Remarks at the Media Briefing on COVID-19 – 11 March 2020, World Health Organization (Mar. 11, 2020). https://www.who.int/dg/speeches/detail/who-director-general-s-opening-remarks-at-the-media-briefing-on-covid-19---11-march-2020.  COVID-19 has infected more than 1.4 million people worldwide, leading to more than 73,000 deaths, as of April 6, 2020. https://coronavirus.jhu.edu/map.html.   All 50 states and the national government have declared states of emergency. See Proclamation on Declaring a National Emergency Concerning the Novel Coronavirus Disease (COVID-19) Outbreak (Mar. 13, 2020), Kamran Rahman & Alice Miranda Ollstein, How States Are Responding to Coronavirus, in 7 Maps, POLITICO (Mar. 24, 2020). Additionally, more than half of the states and the District of Columbia have imposed severe "lockdown" rules for their citizens.  Moreover, conditions of imprisonment create the ideal environment for the transmission of contagious diseases. Joseph A. Bick, Infection Control in Jails and Prisons, 45 CLINICAL INFECTIOUS DISEASES 1047, 1047 (2007), https://academic.oup.com/cid/article/45/8/1047/344842.

"Incarcerated/detained persons live, work, eat, study, and recreate within congregate environments, heightening the potential for COVID-19 to spread once

introduced." Centers for Disease Control and Prevention (CDC), Interim Guidance on Management of Coronavirus Disease 2019 (COVID19) in Correctional and Detention Facilities (Mar. 23, 2020). Because of these dangers, the public health community is insistent on the critical need to rapidly reduce our prison populations, both for the health of our inmates and the health of the community as a whole:

> It is . . . an urgent priority in this time of national public health emergency to reduce the number of persons in detention as quickly as possible . . . Releasing as many inmates as possible is important to protect the health of inmates, the health of correctional facility staff, the health of health care workers at jails and other detention facilities, and the health of the community as a whole.

**Exh. A**, Beyrer Decl., ¶¶ 17, 19.

As a Bureau of Prisons inmate, it is impossible for Mr. Concepción to be fully protected. Exhibit II, is a report from OSHA, that establishes that the ventilation and air conditioning system at Bennettsville recycles the air from cell to cell, increasing the risk of contagion even taking the CDC precautions into consideration. This risk of serious illness or death from the unprecedented global pandemic, together with all of the other relevant factors in this case, presents an extraordinary and compelling basis for sentence reduction.

<u>Courts responding to the Coronavirus pandemic have recognized the critical importance of reducing incarcerated populations</u>

The Court response to COVID-19 reflects the extreme exigency of the present circumstances. In *United States v. Copeland*, the court granted a sentence reduction to time served under another portion of the First Step Act to a defendant serving a life sentence for a drug trafficking conspiracy and firearm possession. No. 2:05-cr-00135-DCN (D. S.C. Mar. 24, 2020) (ECF No. 662). The

court recognized that the defendant's "tenuous health condition" put him at "even higher risk for severe illness and possible death" from the COVID-19 pandemic. *Id.* at 7.  The court considered letters from members of Congress as evidence of its "desire for courts to 'use all available powers and authorities . . . to reduce the number of federal prisoners in . . . prisons,'" especially for elderly and sick individuals and those within the last 36 months of their sentences who are appropriate for placement in home confinement. *Id.* (quoting Letter of House Judiciary Committee, Mar. 19, 2020).

A sampling of the court orders granting release based on the pandemic fails to convey the full volume of building precedent. *See, e.g., United States v. Harris*, No. 19-cr-00356-RDM (D.D.C. Mar. 26, 2020), ECF No. 35 ("The Court is convinced that incarcerating Defendant while the current COVID-19 crisis continues to expand poses a far greater risk to community safety than the risk posed by Defendant's release to home confinement on . . . strict conditions."); *United States v. Perez*, No. 19 CR. 297 (PAE), 2020 WL 1329225, at *1 (S.D.N.Y. Mar. 19, 2020) (releasing defendant due to the "heightened risk of dangerous complications should [h]e contract COVID-19"); *United States v. Stephens*, No. 15- cr-95 (AJN), 2020 WL 1295155, at *2 (S.D.N.Y. Mar. 19, 2020) (releasing defendant in light of "the unprecedented and extraordinarily dangerous nature of the COVID-19 pandemic").

When extraordinary and compelling reasons are established, the Court must consider the relevant sentencing factors in § 3553(a) to determine whether a sentence reduction is warranted. 18 U.S.C. § 3582(c)(1)(A)(i).  Under all of the circumstances in this case, the Court should conclude that the time that

Defendant has already served is sufficient to satisfy the purposes of sentencing. Here, the overriding factor under § 3553(a) that was not present at the time of sentencing, namely the COVID-19 pandemic and the serious risk it presents. The sentencing purpose of just punishment does not warrant a sentence that includes exposure to a life-threatening illness. *Cf.*, *Helling v. McKinney*, 509 U.S. 25, 28 (1993) (holding the Eighth Amendment's prohibition on cruel and unusual punishment includes unreasonable exposure to dangerous conditions in custody); *see also*, *Wallis v. Baldwin*, 70 F.3d 1074, 1076 (9th Cir. 1995) (applying *Helling* to exposure to asbestos); *Brown v. Mitchell*, 327 F. Supp. 2d 615, 650 (E.D. Va. July 28, 2004) (applying *Helling* to contagious diseases caused by overcrowding conditions).  The § 3553(a) factors can be met in this case by an order of home confinement as a condition of supervised release.

The totality of the circumstances demonstrates that reducing Defendant's sentence after he has already served a lengthy period of imprisonment, is "sufficient, but not greater than necessary," to serve the purposes of sentencing under § 3553(a).  As noted above, Defendant is willing to endure whatever stringent conditions the court deems appropriate, including home confinement if necessary. Furthermore, if the court is not convinced that a reduction is warranted a furlough may be granted until the health threat subsides.

<u>If this Court should require it, defendant can make bond</u>

Mr. Concepción's wife and his brother are duly employed and willing to install a line for electronic monitoring device or any other guarantee the court may deem necessary when evaluating early release or furlough.

## **Conclusion**

For these reasons, the Court should reduce defendant Mr. Humberto Concepción's sentence under 18 U.S.C. §§ 3582(c)(2) and (c)(1)(A)(i).  The Court should also grant Defendant's release to his residence pending final disposition of this motion or in the alternative grant him furlough until it is safe to finish serving his sentence.

Certificate of Service: We hereby notify that an exact copy of this motion has been served to all parties simultaneously through the CM/ECF system of the District Court of Puerto Rico.

s/ Jennie M. Espada
USDC 225003
PO Box 13811
San Juan, PR 00908
Espada.esquire@gmail.com
787-633-7199