# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **UNITED STATES OF AMERICA**, Plaintiff, <br><br> v. <br><br> **[1] HUMBERTO CONCEPCION-ANDRADES**, Defendant. | **CRIMINAL NO. 17-240 (FAB)** |

## UNITED STATES OF AMERICA'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION REQUESTING REDUCTION OF SENTENCE

TO THE HONORABLE COURT:

COMES NOW the United States of America, by and through the undersigned attorney, respectfully states and prays as follows:

### Introduction

1.      On April 10, 2017, an Indictment was filed against defendant, charging him with a conspiracy to possess with intent to distribute five (5) kilograms or more of cocaine, in violation of 21 U.S.C. § 846, and another related charge. (ECF No. 3).

2.      On March 13, 2019, pursuant to a plea agreement, defendant pled guilty to Counts One and Five of the Indictment. (ECF No. 583-585). In the plea agreement, the parties agreed to recommend defendant be sentenced to a term of imprisonment of 168 months. (ECF No. 584, p.7).

3.      On June 12, 2019, a sentencing hearing was held before The Honorable Francisco A. Besosa. (ECF No. 651). After hearing arguments from the parties, the Court sentenced

defendant to a term of imprisonment of 168 months. (ECF No. 651).

4. On May 13, 2020, defendant filed a motion requesting a reduction of sentence pursuant to 18 U.S.C. §§ 3582(c)(2)[1] and (c)(1)(A)(i) in light of the COVID-19 pandemic. (ECF No. 934).

5. The Court has ordered the Government to respond to defendant's motion no later than May 28, 2020. (ECF No. 935).

6. Defendant's motion should be denied for several reasons. First, defendant has not sought or exhausted his administrative remedies. Second, defendant does not satisfy the requirements for compassionate release. Third, the Court lacks authority to order furlough. Finally, consideration of the relevant factors enumerated in 18 U.S.C. § 3553(a) support denial of defendant's motion.

**Facts**

7. As stipulated in the plea agreement, the relevant facts are as follows. The defendant was a member of a conspiracy that shipped kilograms of cocaine from Puerto Rico to the Continental United States (CONUS) through the Luis Munoz Marin International Airport (LMMIA). During the course of the conspiracy, various smuggling methods were used to transport the cocaine through the LMMIA and facilitate getting the drugs past Transportation Security Administration (TSA) security undetected. Once in the CONUS, the narcotics were distributed by other members of the conspiracy. The defendant was a supplier of cocaine during the conspiracy. In that role, he acted as an organizer and leader.

---

[1] Defendant erroneously cites 18 U.S.C. § 3582(c)(2) in support of his request. This subsection, however, is inapplicable since defendant's sentencing range has not been subsequently lowered by the Sentencing Commission pursuant to 28 U.S.C. 994(o).

8. The defendant also was a member of a conspiracy to commit money laundering. The defendant funneled narcotic proceeds through corporations and bank accounts in an attempt to conceal the nature, source, location, ownership, and control of the proceeds.

### Discussion

***Defendant has failed to fully exhaust administrative appeals as required before the court may consider a sentence reduction based upon compassionate release***

9. Defendant's motion should be summarily denied because he has not sought – much less exhausted – his administrative remedies related to a request for compassionate release.

10. "'[A] judgment of conviction that includes [a sentence of imprisonment] constitutes a final judgment' and may not be modified by a district court except in limited circumstances." Dillon v. United States, 560 U.S. 817, 825 (2010). Finality is an important attribute of criminal judgments, and one "essential to the operation of our criminal justice system." Teague v. Lane, 489 U.S. 288, 309 (1989). It is well established that once a district court has pronounced sentence and the sentence becomes final, the court has no inherent authority to reconsider or alter that sentence. It may do so only pursuant to statutory authorization. *See, e.g.*, United States v. Addonizio, 442 U.S. 178, 189 & n.16 (1979); United States v. Washington, 549 F.3d 905, 917 (3d Cir. 2008); United States v. Smartt, 129 F.3d 539, 540 (10th Cir. 1997) ("A district court does not have inherent authority to modify a previously imposed sentence; it may do so only pursuant to statutory authorization.") 18 U.S.C. § 3582(c) provides three narrow exceptions to this rule, only the first of which is at issue here.

11. Under 18 U.S.C. § 3582(c)(1)(A):

> [t]he court may not modify a term of imprisonment once it has been imposed except that – (1) in any case – (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant *after the defendant has fully exhausted all administrative rights to appeal* a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that-- (i) extraordinary and compelling reasons warrant such a reduction; . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . .

18 U.S.C. § 3582(c)(1)(A) (emphasis added).

12. Before a defendant may file a motion under 18 U.S.C. § 3582(c)(1)(A), he must have either (a) "fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf," or (b) 30 days must have lapsed since the receipt of such a request by the warden of the prison. 18 U.S.C. § 3582(c)(1)(A). The failure to have exhausted administrative remedies within the Bureau of Prisons ("BOP") is fatal to a defendant's motion for compassionate release. United States v. Raia, 2020 WL 1647922, at *2 (3rd Cir. Apr. 2, 2020) ("Given BOP's shared desire for a safe and healthy prison environment, we conclude that strict compliance with § 3582(c)(1)(A)'s exhaustion requirement takes on added – and critical – importance."); *see also* United States v. Smith, 2020 WL 1903160 (D. Conn. Apr. 17, 2020); United States v. Zywotko, 2020 WL 1492900 (M.D. Fla. Mar. 27, 2020); United States v. Lugo, 2020 WL 1821010, at *3 (D. Me. Apr. 10, 2020) (extensive analysis, concluding, "The Court regards the language of section 3582(c) as both clear and mandatory."); United States v. Johnson, 2020 WL 1663360, at *3-6 (D. Md. Apr. 3, 2020) (concluding in lengthy discussion that § 3582(c)(1)(A)'s exhaustion requirement is jurisdictional and, regardless, there are no

4

exceptions to the exhaustion requirement). An inmate may appeal the Warden's compassionate-release denial through BOP's administrative remedies program. 28 C.F.R § 571.63(a).

13. As the proponent of a motion, the inmate bears the burden of proving that they have satisfied the procedural prerequisites for judicial review. *See* United States v. Butler, 970 F.2d 1017, 1026 (2d Cir. 1992) ("A party with an affirmative goal and presumptive access to proof on a given issue normally has the burden of proof as to that issue."); United States v. Hamilton, 715 F.3d 328, 337 (11th Cir. 2013) ("[A] defendant, as the § 3582(c)(2) movant, bears the burden of establishing that a retroactive amendment has actually lowered his guidelines range in his case.").

14. In the present case, the Court lacks authority to act on defendant's motion for compassionate release at this time. The statute requires that a request for compassionate release be presented first to the BOP for its consideration; only after 30 days have passed, or the defendant has exhausted all administrative rights to appeal the BOP's failure to move on defendant's behalf, may a defendant move for compassionate release in court. This is a statutorily-imposed restriction.

15. Here, defendant has failed to file an administrative motion with the warden. The continuing spread of COVID-19 has been public knowledge for weeks if not months now, giving defendant plenty of time to file for such administrative relief. Indeed, BOP has been planning for potential coronavirus transmissions since January. This knowledge was not limited to the BOP. The COVID-19 virus has been making local and global headlines as a serious public health emergency since at least early 2020. Defendant could have and should have followed the normal administrative procedure, if he had any particularized concern related to the COVID-19 outbreak.

16. The Third Circuit has recently held that a defendant seeking a COVID-19 compassionate release must meet the 30-day exhaustion requirement with BOP:

> [w]e do not mean to minimize the risks that COVID-19 poses in the federal prison system, particularly for inmates like [defendant]. But the mere existence of COVID-19 in society and the possibility that it might spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread. Given BOP's shared desire for a safe and healthy prison environment, we conclude that strict compliance with § 3582(c)(1)(A)'s exhaustion requirement takes on added – and critical – importance. And given the Attorney General's directive that BOP "prioritize the use of [its] various statutory authorities to grant home confinement for inmates seeking transfer in connection with the ongoing COVID-19 pandemic," we anticipate that the exhaustion requirement will be speedily dispatched in cases like this one.

Raia, 2020 WL 1647922 at *2.

17. Defendant argues he exhausted administration remedies and included in his motion a letter sent to BOP. The letter is captioned "Inmate Request to Staff." (ECF No. 934-1). In the letter, defendant requested "a review of my case in light of the Covid-19 pandemic and the authority granted to the Bureau of Prisons by the Attorney General under his memoranda dated March 26, 2020 and April 3, 2020." (ECF No. 934-1). The letter further states, "I humbly request, relying on the Attorney General's Covid-19-related memoranda, be allowed to serve the remainder of my sentence under home confinement." (ECF No. 934-1). The letter does not request a reduction of sentence pursuant to 18 U.S.C. § 3582. The letter also does not cite to section 3582, mention "compassionate release," nor include the phrase "extraordinary and compelling reasons warrant such a reduction." Nothing in the letter signals to BOP that the request is being made pursuant to 18 U.S.C. § 3582. To the contrary, the letter specifically states the defendant is "relying on the Attorney General's Covid-19-related memoranda." (ECF No. 934-1). In the letter, in support of his claim, defendant cited to the Attorney General's April 3,

2020 memorandum, which itself references the Attorney General's earlier March 26, 2020 memorandum, both of which triggered BOP's expanded authority under the CARES Act to transfer prisoners to home confinement. In a recent Third Circuit district court order denying a defendant's motion for compassionate release, the court noted that "based on the language in the BOP's April 5, 2020 announcement," related to the two aforementioned memoranda from the Attorney General, "there may be some confusion . . . as to whether the announcement relates to applications for compassionate release under Section 3582(c)(1)(A)." United States v. Viteri, 19-cr-44, at *5 n. 3 (D.N.J. April 10, 2020). The court explained, however, "BOP's review of all inmates for possible discretionary transfer to home confinement under Section 3624(c)(2) is separate and distinct from the compassionate release provision under Section 3582(c)." Id.

      18.     Unfortunately and inevitably, some inmates have become ill due to COVID-19, and more likely will in the weeks ahead. However, the solution is not to exclude BOP from reviewing applications for compassionate release. There are many challenging factors to consider during this unprecedented pandemic, and the BOP should have the opportunity to assess those factors during the statutorily required review period. For example, notwithstanding the current pandemic crisis, the BOP must carry out its charge to incarcerate sentenced criminals to protect the public. It must consider the effect of a mass release on the safety and health of both the inmate population and the citizenry. It must marshal its resources to care for inmates in the most efficient and beneficial manner possible. It must assess release plans, which are essential to ensure that a defendant has a safe place to live and access to health care in these difficult times. And it must consider myriad other factors, including the availability of transportation for inmates (at a time that interstate transportation services often used by released inmates are providing reduced if any service), and of supervision of inmates once released (at a time that the Probation

Office has necessarily cut back on home visits and supervision).

19. Absent a final administrative decision, an inmate has failed to exhaust his administrative remedies as required by 18 U.S.C. § 3582(c)(1)(A). Thus, given defendant has not exhausted his administrative remedies, the Court must deny his motion on that ground alone.

***Defendant does not satisfy the requirements for compassionate release***

20. Even if the Court were to disregard defendant's failure to comply with the statute's procedural requirements, his motion should nonetheless be denied because he does not satisfy the requirements for compassionate release.

21. A court may reduce a term of imprisonment upon finding "extraordinary and compelling reasons" which are "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A).

22. Examples of qualifying "extraordinary and compelling reasons" include (1) terminal illness; (2) a serious medical condition that substantially diminishes the ability of the defendant to provide self-care in prison; or (3) the death of the caregiver of the defendant's minor children. *See* USSG §1B1.13 comment, n.1. Even when an extraordinary and compelling reason exists, however, a court should only grant a motion for release if it determines that the defendant is not a danger to the public. USSG §1B1.13(2). In addition, the court must consider, in general, whether the 18 U.S.C. § 3553(a) factors weigh in favor of release. *See* 18 U.S.C. § 3582(c)(1)(A); USSG §1B1.13.

23. A defendant seeking compassionate release bears the burden of establishing that release is warranted. United States v. Heromin, 2019 WL 2411311 (M.D. Fla. June 7, 2019); United States v. Stowe, 2019 WL 4673725 (S.D. Tex. Sept. 25, 2019); United States v. Hamilton, 715 F.3d 328, 337 (11th Cir. 2013) (holding that a movant for a reduction under

section 3582(c)(2) bears the burden to establish a reduction is warranted).

24. Defendant argues the COVID-19 pandemic justifies granting compassionate release. He further claims that "[p]risoners with pre-existing medical conditions, like defendant, who has sinusitis and severe congestion on account of it, render them more vulnerable to be more severely impacted by infection of the coronavirus then those in excellent health." (ECF No. 934, p.1). The Court should deny defendant's motion on the merits because potential COVID-19 exposure is not an extraordinary and compelling reason to grant release under any circumstances. Raia, 2020 WL 1647922 at *2 ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release[.]"); United States v. Gileno, 2020 WL 1307108, at *4 (D. Conn. Mar. 19, 2020) (denying compassionate release because BOP's proposed plan adequately addresses the COVID-19 pandemic).

25. The United States is cognizant of inmate concerns stemming from COVID-19. The United States and the BOP are attuned to the risk; this unique situation is being diligently monitored. The BOP has taken aggressive action to mitigate the effects of COVID-19, and has been taking proactive steps to prevent potential coronavirus transmissions for months. *See Updates to BOP Covid-19 Action Plan*, located at https://www.bop.gov/resources/news/20200319_covid19_update.jsp (last accessed on April 17, 2020). On March 13, 2020, after consulting with the Centers for Disease Control (CDC) and reviewing guidance from the World Health Organization, the BOP released its multistep action plan to minimize the risk of COVID-19 in its facilities. The BOP continues to update its plan as it gathers additional information and resources to better manage and protect its inmate population.

26. The BOP has implemented several preventive measures, including, but not limited to, the following:

a) **Inmate and Staff Screenings**:

Effective April 1, 2020 all inmates in every institution will be secured in their assigned space for 14 days. All incoming inmates are quarantined for 14 days, and screened for COVID-19 symptoms and risk of exposure. Asymptomatic inmates with a documented risk of exposure will be quarantined; symptomatic inmates with documented risk of exposure will be isolated and tested pursuant to local health authority protocols. In areas with sustained community transmission, all facility staff will be screened for self-reported risk factors and elevated temperatures. (Staff registering a temperature of 100.4 degrees Fahrenheit or higher will be barred from the facility on that basis alone.) Contractor access to BOP facilities is restricted to only those performing essential services (e.g. medical or mental health care, religious, etc.) or those who perform necessary maintenance on essential systems. All volunteer visits are suspended absent authorization by the Deputy Director of BOP. Any contractor or volunteer who requires access will be screened using the same procedures as applied to staff prior to entry.

b) **Quarantine Logistics**:

All BOP institutions have assessed their stockpiles of food, medicines, and sanitation supplies, and established quarantine areas within their facilities to house any detainees who are found to be infected with or at heightened risk of being infected with coronavirus pursuant to the above-described screening protocol.

c) **Suspension of Social Visits and Tours:**

The BOP has placed a 30-day hold on all social visits. To ensure that familial relationships are maintained throughout this disruption, all detainees' telephone allowances have been increased to 500 minutes per month. Tours of facilities are also suspended for at least the first 30 days that the BOP's Action Plan is in effect.

d) **Suspension of Legal Visits**:

The BOP has also placed a 30-day hold on legal visits, though such visits will be permitted on a case-by-case basis after the attorney has been screened for infection in accordance with the screening protocols for prison staff.

e) **Suspension of Inmate Movements**:

BOP has also suspended the movement of inmates and detainees among its facilities for at least the first 30 days that the Action Plan is in effect. Though there will be exceptions for medical treatment and similar exigencies, this will prevent transmissions between

institutional populations. **The BOP has emphasized that all inmates, regardless of where they are being housed, are screened for COVID-19 prior to movement. Both the BOP and USMS are using screening protocols for both inmates and staff.** Likewise, all official staff travel has been cancelled, as has most staff training.

    f)    **Modified Operations**:

Wardens at BOP facilities have modified operations, such as staggering of meal times and recreation time, to maximize social distancing.

*See* BOP COVID-19 Resource Page at https://www.bop.gov/coronavirus/index.jsp (regularly updated) (emphasis added).

27.    Taken together, these measures are designed to sharply mitigate the risks of COVID-19 transmission in a BOP institution. Even if a case of COVID-19 were to be confirmed at defendant's facility, the facility has the capacity to address it. The facility employs a team of medical professionals and provides round-the-clock medical care. The facility is equipped to provide medical isolation when required. By virtue of being in the BOP's custody, defendant is in the presence of medical professionals at all times. In the unlikely event that defendant becomes infected with COVID-19, he will be quarantined, monitored, and receive necessary medical treatment, wholly consistent with the CDC's guidelines.

28.    Furthermore, as discussed above, the BOP has been granted wider authority to designate inmates for home confinement in its toolkit of available measures. Based on the aforementioned memoranda, the Attorney General has directed the Director of the BOP, upon considering the totality of the circumstances concerning each inmate, to prioritize the use of statutory authority to place prisoners in home confinement. That authority includes the ability to place an inmate in home confinement during the last six months or 10% of a sentence, whichever is shorter, *see* 18 U.S.C. § 3624(c)(2), and to move to home confinement those elderly and terminally ill inmates specified in 34 U.S.C. § 60541(g). Further, Section 12003(b)(2) of the

Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), Pub. L. No. 116-136, enacted on March 27, 2020, permits the BOP, if the Attorney General finds that emergency conditions will materially affect the functioning of the Bureau of Prisons, to "lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement under the first sentence of section 3624(c)(2) of title 18, United States Code, as the Director determines appropriate."

29. Defendant further argues that his sinusitis and severe congestion place him at an increased risk should he contract the coronavirus. Unfortunately, defendant's circumstance is not extraordinary as many individuals across the nation are in the same or similar position as defendant. While the Government is attuned to the difficulties facing inmates, this particular instance simply fails to meet the requirements of the law and policy.

### *This Court Lacks Authority to Order Furlough*

30. Defendant's motion improperly conflates two separate forms of relief: compassionate release under 18 U.S.C. § 3582(c), and BOP's authority to allow certain prisoners to serve portions of their prison sentences on home confinement. Unlike compassionate release, BOP's ongoing review of all inmates for possible discretionary release to home confinement is being exercised under 18 U.S.C. § 3624(c)(2), as modified by the First Step Act and the CARES Act. *See* 18 U.S.C. § 3624(c)(2) ("The authority under this subsection may be used to place a prisoner in home confinement for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months. The Bureau of Prisons shall, to the extent practicable, place prisoners with lower risk levels and lower needs on home confinement for the maximum amount of time permitted under this paragraph.") CARES Act, § 12003(b) ("During the covered emergency period, if the Attorney General finds that emergency conditions will materially affect the

functioning of the Bureau, the Director of the Bureau may lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement under the first sentence of section 3624(c)(2) of title 18, United States Code, as the Director determines appropriate."). Accordingly, the BOP's review of all inmates for possible discretionary transfer to home confinement under § 3624(c)(2) is ***not*** the same thing as compassionate release under § 3582(c).

31. Moreover, because BOP's determination to transfer an inmate to home confinement (or not) under § 3624(c) relates to BOP's discretionary execution of defendant's conditions of confinement, any challenge to BOP's decision not to transfer defendant to home confinement must be brought in a § 2241 habeas proceeding, in the district of confinement. *See, e.g.*, United States v. McGimsey, 2019 WL 2396574, at *3 (W.D. Ky. June 6, 2019) (discussing section 3624(c), and explaining: "Thus, 'it is the BOP—and not the courts—who decides whether home detention is appropriate' under [section 3624(c)]. . . . This statutory language also makes clear that the BOP's authority to release a prisoner to home confinement is discretionary, because it provides that 'the authority . . . may be used . . .' to place prisoners on home confinement 'to the extent practicable.' Moreover, as with good-time credits, should McGimsey ultimately seek[ ] review of this decision on constitutional grounds, he must first exhaust his remedies with the BOP and then seek relief by filing a § 2241 habeas corpus petition."); *see also* Marshall v. Hudson, --- F. App'x ---, 2020 WL 1131228, at *4-*5 (10th Cir. Mar. 9, 2020) (not precedential) (holding that federal courts have no power to order that an inmate be placed in certain BOP programs, but have jurisdiction under § 2241 to review the "BOP's statutory interpretation" related to such programs).

32. Here, as an alternative relief, defendant requests the Court "grant him furlough until it is safe to finish serving his sentence." (ECF No. 934, p.13). In a recent Third Circuit district court order denying a defendant's motion for compassionate release, the court noted that "based on the language in the BOP's April 5, 2020 announcement," related to the two aforementioned memoranda from the Attorney General, "there may be some confusion . . . as to whether the announcement relates to applications for compassionate release under Section 3582(c)(1)(A)." United States v. Viteri, 19-cr-44, at *5 n. 3 (D.N.J. April 10, 2020). The court explained, however, "BOP's review of all inmates for possible discretionary transfer to home confinement under Section 3624(c)(2) is separate and distinct from the compassionate release provision under Section 3582(c)." Id.

33. Thus, this Court has no authority to transfer defendant to home confinement or grant furlough, and defendant's request for such relief should be denied.

*Consideration of 3553(a) Factors*

34. The Court's consideration of the relevant factors enumerated in 18 U.S.C. § 3553(a) further supports denying defendant's request.

35. Here, the sentence of 168 months incarceration was sufficient, but not greater than necessary, to: reflect the nature and circumstances of the offense as well as its seriousness; promote respect for the law; provide just punishment; afford adequate deterrence to criminal conduct; and protect the public from further crimes of defendant. The sentence promoted the judicial goals of both specific and general deterrence and precluded defendant from further engaging in the criminal conduct that characterized his actions on during the charged conspiracies.

36. The Court's well thought out rationale in imposing a sentence of 168 months will

be severely undermined if defendant's motion is granted. As of the date of his motion, defendant has only served 37 of the 168 months imposed. Defendant was arrested and ordered detained on April 19, 2017 and filed his motion for compassionate release on May 13, 2020 (i.e. 37 months later). Defendant still has to serve another 131 months.

## **Conclusion**

37. The Court should deny defendant's motion for release based on his failure to exhaust administrative remedies. However, if this Court were to consider the merits of defendant's motion, it similarly be denied. The BOP has procedures in place to adequately address COVID-19. Therefore, COVID-19 is not an extraordinary and compelling reason to grant defendant's release. Gileno, 2020 WL 1307108 at *4. Finally, consideration of the relevant § 3553(a) factors support a finding that the Court's 168-month sentence should remain undisturbed.

38. In sum, although our nation is in the midst of a national crisis requiring extraordinary measures, § 3582 contemplates compassionate release, not the widespread release of inmates serving lawfully-imposed sentences.

WHEREFORE, the United States of America respectfully requests that this Honorable Court deny defendant's motion in its entirety.

RESPECTFULLY SUBMITTED. In San Juan, Puerto Rico, this 27th day of May, 2020.

    W. STEPHEN MULDROW
    United States Attorney

    s/José A. Contreras
    José A. Contreras
    Assistant United States Attorney
    USDC No. G00612
    350 Carlos Chardón Avenue, Suite 1201
    San Juan, Puerto Rico 00918

**CERTIFICATE OF SERVICE**

    I HEREBY CERTIFY that on this 27th day of May, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all parties in this case.

                                          s/José A. Contreras
                                          José A. Contreras
                                          Assistant United States Attorney